UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JADE FRANCIS,

                        Plaintiff,

-against-

APTDECO, INC., JASON GRANT,
KALAM DENNIS and REHAM FAGIRI
individually,

                        Defendants.
------------------------------------------------------------------X

**Civ. No.**

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

Plaintiff, JADE FRANCIS ("Plaintiff" or "FRANCIS"), by and through her attorneys, L & D LAW P.C, complaining of Plaintiffs, jointly and severally, herein respectfully shows to this Court and alleges the following:

### NATURE OF THE CASE

1. This is an action to remedy discrimination based on disability discrimination, retaliation and unlawful termination and is brought by Plaintiff Jade Francis pursuant to Defendants' violation, under color of state law, of her rights, privileges and immunities.

2. Plaintiff complains pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C 12101 et seq., as amended by the ADA Amendments Act of 2008; the New York State Human Right Law, New York Executive Law 296 et seq. (the Human Rights Law); and the Administrative Code of the City of New York 8-107 et seq. (the "Administrative Code). Supplemental jurisdiction is proper in this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by her employer on the basis of disability discrimination, retaliation and unlawful termination inflicted upon Plaintiff

1

by Defendant.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. §§ 1331 and the Civil Rights Act of 1866 and 1871 which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

4. The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Southern District of New York.

## JURY DEMAND

5. Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## PARTIES

6. Plaintiff, Jade Francis is an individual 26-year-old woman who resides in the State of New York, Suffolk County.

7. Defendant AptDeco, Inc., (hereinafter referred to as Defendant "AptDeco") is an active Foreign Business Corporation with a corporate office for the purpose of business transaction located at 300 W 57'th St, New York, 10019.

8. At all times material, Plaintiff was a full-time employee in the position of Customer Experience (CX) Manager.

9. At all times material, Jason Grant (hereinafter referred to as "Grant") was and is the Director of Operations at AptDeco, Inc.

10. At all times material Defendant Grant had direct supervisory authority over Plaintiff Francis regarding her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

11. At all times material, Defendant Kalam Dennis (hereinafter referred to as "Dennis") was and is the Co-founder of AptDeco.

2

12. At all times material Defendant Dennis had direct supervisory authority over Plaintiff Francis with regard to her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

13. At all times material, Defendant Reham Fagiri (hereinafter referred to as "Fagiri") was and is the Co-founder of AptDeco, INC.

14. At all times material Defendant Fagiri had direct supervisory authority over Plaintiff Francis with regard to her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

## FACTS

15. On or about, July 1, 2019 Plaintiff Francis began her employment as a Customer Experience Associate at Defendant AptDeco.

16. At the time of her employment, Plaintiff informed her immediate supervisor at the time, that she suffered from Epilepsy. As Plaintiff's supervisors changed over time, each of the new supervisors were informed by the Plaintiff of her diagnosed, regarded as, and perceived disability.

17. Plaintiff Francis was talented in her position and always worked tirelessly to ensure that each work-related task was completed assiduously and on time.

18. In or around January of 2020, Defendants' Director of Operations, Grant, using the Defendants' Human Resources portal, changed the beginning (hiring date) of Plaintiff's year from June 1, 2019 to January 1, 2020. As a result, Plaintiff lost approximately 62 hours of overtime.

19. Plaintiff informed the Defendant's Director of Operations Grant approximately 10 - 15 times regarding this error. The Defendants never acted to remedy the error.

20. On or about January 7, 2020, Plaintiff had a seizure on account of her disability.

21. Plaintiff informed her supervisor at the time, Defendant Fagiri, and as a result of the

seizure, the Plaintiff took the following two days off from work.

22. On or about March 3, 2020, Defendants' Co-Founder Dennis informed the Plaintiff that he would be taking over as the Supervisor of the CX Department.

23. Defendants' Co-Founder Dennis informed the Plaintiff that she needed to work harder if she desired upward mobility within the company.

24. However, on or about March 10, 2020, Plaintiff suffered from another seizure on account of her disability.

25. Plaintiff informed Defendants' Director of Operations Grant regarding her seizure and worked from home the following day.

26. On or about March 13, 2020, Defendant AptDeco gave their employees the option to work remotely due to COVID-19.

27. However, since Plaintiff was in charge of onboarding a new employee for the customer experience department, she was expected to travel to the office.

28. Out of fear of being exposed to COVID-19 which would severely compromise Plaintiff's immune system and worsen her disability, Plaintiff reached out to Defendants' Director of Operations Grant and inquired as to whether the onboarding process could be completed remotely. After a bit of back-and-forth, Grant agreed.

29. However, Defendants' Co-Founder Dennis called Plaintiff later to inform her that they needed Plaintiff to travel to the office in order to onboard the new employee. Plaintiff agreed out of fear of retaliation.

30. On or about March 17, 2020, Plaintiff again inquired with Grant whether she could onboard the new employee remotely to which Defendants reluctantly agreed.

31. On or about March 24, 2020, because of the quarantine, Defendants Grant and Dennis decided to furlough the employee that the Plaintiff had just remotely onboarded.

32. As a result of the furlough, Plaintiff was the only full-time employee in her department,

which meant that she would have to take on all of the department's responsibilities and work-related tasks all by herself.

33. On account of Plaintiff's disability, the Plaintiff asked for a reasonable accommodation in the form of an hourly reduction and some additional days off.

34. Despite being aware of the Plaintiff's disabilities and request for reasonable accommodations, the Defendants took advantage of the Plaintiff and still overworked her as much as possible.

35. In or around April of 2020, after Plaintiff's continuous persistence with her supervisors to get a day off, Defendant Grant informed the Plaintiff that she could get a day off for the Easter Holiday.

36. On or about April 13, 2020, even though Plaintiff was promised a day off for Easter, there was no staff to cover the Plaintiff, thus Defendants demanded that Plaintiff work on Easter Sunday.

37. On or about April 14, 2020, business was picking up at an unprecedented level. As a result, it became objectively impossible for the Plaintiff to handle the department's responsibilities all by herself especially in light of Plaintiff's disability for which Defendants refused a reasonable accommodation.

38. The Plaintiff expressed these concerns to Defendant's Director of Operations Grant and advised Defendant Grant that her disability was becoming aggravated and exacerbated as a result of receiving no reasonable accommodation.

39. Grant assured the Plaintiff that the company would hire an employee to support her.

40. On or about April 28, 2020, Defendant's Director of Operations, Grant officially took over as Plaintiff's supervisor and reassured her that it was a priority of the company to hire someone to assist her with the massive workload.

41. On or about May 5, 2020, Defendants' Director of Operations Grant ordered the

Plaintiff to reach out to the new employee who was furloughed, to inform him that they would be bringing him back onboard.

42. During the same day, Defendants issued conflicting statements to the Plaintiff and later informed the Plaintiff that they were now unsure whether they would rehire this employee at this time.

43. Finally, in or around late May of 2020, Pierce Lydon, a part-time employee was hired full time.

44. Defendants' Director of Operations Grant informed the Plaintiff that since Mr. Pierce was hired full time, Plaintiff could take off for the Memorial Day weekend.

45. However, soon thereafter, Defendant's Director of Operations Grant informed the Plaintiff that she was unable to take off since the Defendants were still understaffed.

46. On or about June 2nd, 9th, 16th, 23rd and 30th of 2020, during the weekly "status" meetings, Plaintiff informed Defendants' Director of Operations Grant and other supervisors that her health was declining without any accommodation and that she was in dire need of time off.

47. Specifically, the Plaintiff reiterated that the stress from being overworked was the main cause of her seizures and aggravated/exacerbated her disability.

48. However, during each meeting, Defendants' Director of Operations Grant falsely reassured the Plaintiff that she would eventually be able to take time off.

49. On or about July 9, 2020, in a moment of desperation, the Plaintiff reached out to Defendants' Co-Founder Dennis, pleading for a day off and clearly stated that she was suffering from declining health because of the overload of work.

50. On or about July 13, 2020, as a result of Plaintiff's hard work, the Defendants promoted Plaintiff to CX Manager.

51. Plaintiffs' salary increased yearly from $42,000 to $52,000 with overtime only being

calculated after 45 hours of regular pay.

52. Rather than have any interactive discussion regarding Plaintiff's disability or her requests for a reasonable accommodation, the Defendants attempted to silence the Plaintiff by promoting her to Customer Experience (CX) Manager. Though ostensibly this was a "promotion," it was an attempt to keep the Plaintiff working long hours under great stress.

53. As time went on, Defendant's Director of Operations Grant advised the Plaintiff that she would be able to have a vacation around Labor Day.

54. On or about August 11, 2020, the Plaintiff continued reaching out to Grant, inquiring about a new hire and reasonable accommodation in the customer experience department.

55. The Plaintiff continued to reiterate that she was burnt out and needed time off in order to recuperate physically, mentally and nurse her disability.

56. On or about September 1, 2020, Defendants' Director of Operations Grant retaliated against the Plaintiff, and reneged on his promises for a weekend off, instructing the Plaintiff she was not permitted to take off at all.

57. The number of false promises for a reasonable accommodation on account of Plaintiff's disability left the Plaintiff in a state of shock, disappointment and declining health.

58. Beginning on or about September 8, 2020, the Plaintiff started working 6 days a week.

59. Once again, Plaintiff continued to address her concerns to Grant regarding her physical disability. Plaintiff wished she could leave but Defendants dangled Plaintiff's job over her head, demanding that she complete her work tasks or face termination.

60. Defendant's Director of Operations Grant assured the Plaintiff that she would be able to get time off at the end of the year, though Plaintiff was doubtful of Defendants providing any accommodation.

61. On or about September 18, 2020, the Plaintiff informed Defendants that her disability has worsened substantially and that she could no longer continue working the number of hours she was currently working without an accommodation.

62. At this time, the Plaintiff was logging anywhere between 60-65+ hours per week.

63. On or about September 25, 2020, the Plaintiff reiterated the above information to Defendants.

64. On or about September 29, 2020, as a result of Defendants' failure to reasonably accommodate the Plaintiff for her disability, Plaintiff proposed that Defendants begin temporarily reducing the days she worked to 4 days per week. At the time of this proposal, Defendants Director of Operations Grant confirmed it was not a problem.

65. At or around this same time, Plaintiff again reiterated workload burnout and the stress induced risk to suffer more seizures.

66. Defendants' employee Grant stated that he would agree to reduce the Plaintiffs days to 4 days per week (34 hours) but raised concerns over whether Defendants' Dennis and Fagiri would agree to the Plaintiff keeping the CX Manager Title given the reduction in days.

67. Plaintiff immediately reached out to Grant and Dennis via email confirming that she would gladly accept the demotion so that she could take care of her health and disability.

68. None of Defendants owners, founders or supervisors returned Plaintiff's calls or emails regarding her change in days. Rather than address Plaintiff's concerns regarding her disabilities; rather than hold any <u>interactive discussion</u> with the Plaintiff, and rather than offer a different type of accommodation; the Defendants fired the Plaintiff for her disability and protected requests.

69. On or about September 30, 2020, the Defendants unlawfully terminated the Plaintiff via email stating: "The CX manager position requires full-time hours. Given your

decision to reduce your hours to part-time we have determined that this is no longer a good fit. This letter is to inform you that your employment with AptDeco will end as of September 30'th 2020."

70. Defendants actions left the Plaintiff in shock and horror. Plaintiff had dedicated every waking hour to her job, going above and beyond to complete her tasks. Defendants had never disciplined the Plaintiff for a failure to complete her work. Instead, Defendants discriminated, retaliated, created a hostile environment and terminated the Plaintiff who simply needed an accommodation for her diagnosed, regarded as and perceived disability.

71. As a result of Defendants' actions, Plaintiff Francis felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

72. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff Francis suffered and continues to suffer severe emotional distress.

73. As a result of the acts and conduct complained of herein, Plaintiff Francis has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

74. Plaintiff Francis has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

75. Plaintiff Francis further suffers from panic attacks and cannot sleep at night on account of Defendants' discriminatory and retaliatory conduct.

76. Defendant's unlawful behavior took a toll on Plaintiff's mental health, resulting in physical manifestations which exacerbated, re-activated and aggravated the Plaintiff's disability.

77. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff Francis demands Punitive Damages against

Defendants.

78. The above are just some of the examples of unlawful and discriminatory conduct to which Defendant subjected Plaintiff Francis.

79. Plaintiff Francis suffered and will continue to suffer as a direct result of Defendant's disability discrimination, retaliation, severe and pervasive hostile work environment and unlawful termination.

80. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

81. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction of all lower Courts.

82. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION FOR
DISCRIMINATION UNDER THE
NEW YORK CITY ADMINISTRATIVE CODE
(Not Against Individual Defendants)**

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

85. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(a) by creating and maintaining

discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. The New York City Administrative Code Title 8, §8-107(l)(e) provides that it shall be unlawful discriminatory practice: "For an employer... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

88. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(l)(e) by discriminating against the Plaintiff because of Plaintiffs opposition to the unlawful employment practices of Plaintiffs employer.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

89. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

90. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

91. Defendants violated the section cited herein as set forth.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

94. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of

subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility; or
(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

97. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (Not Against Individual Defendants)

98. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

99. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

100. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

103. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER STATE LAW
### (As Against Individual Defendants)

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

105. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

106. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (not against individual Defendants)

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

108. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

109. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

110. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A TENTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### (not against individual Defendants)

111. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

113. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

(a) a declaration that Defendants violated Plaintiff's federal and state civil rights;

(d) compensatory damages for the injuries suffered by Plaintiff by reason of Defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial in an amount to be determined at trial;

(c) punitive damages against the individual Defendants assessed to deter such intentional and reckless deviations from well-settled constitutional standards, to the extent allowable by law;

(d) damages for emotional distress, lost wages, back pay, front pay, statutory damages, medical expenses, interest;

(d) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws; and

(e) such other and further relief as appears just and proper.

Dated: New York
  February 14, 2022,

        **L & D Law, P.C.**
        Liggieri & Dunisha

        _____/s/_____
        Paul Liggieri, Esq.
        *Attorneys for Plaintiff*
        11 Broadway, Suite 615
        New York, NY 10004
        (212) 374-9786